```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


  * * * * * * * * * * * * * *
  *UNITED STATES OF AMERICA    *
                               *    CRIMINAL ACTION
                v.             *    No. 11-10152-RGS-1
  *                            *
  MARK LEPAGE                  *
                               *
  * * * * * * * * * * * * * *




              BEFORE THE HONORABLE RICHARD G. STEARNS
                   UNITED STATES DISTRICT JUDGE
                          PLEA HEARING
                        January 6, 2014


  APPEARANCES:

          UNITED STATES ATTORNEY'S OFFICE, (By AUSA David G.
     Tobin and AUSA Carlos A. Lopez), 1 Courthouse Way, Suite
     9000, Boston, Massachusetts  02210, on behalf of the
     United States of America

          FEDERAL PUBLIC DEFENDER OFFICE, (By Page Kelley,
     Esq.), 51 Sleeper Street, 5th Floor, Boston,
     Massachusetts  02210, on behalf of the Defendant





                                     Courtroom No. 21
                                     1 Courthouse Way
                                     Boston, Massachusetts 02210


                       James P. Gibbons, RPR, RMR
                         Official Court Reporter
                      1 Courthouse Way, Suite 7205
                       Boston, Massachusetts  02210
                          jmsgibbons@yahoo.com
```

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  All rise for this Honorable Court.
 3         Court is open.  Please be seated.
 4         The case before this Court carries Case
 5    No. 11-cr-10152, United States of America versus Mark
 6    Lepage.
 7         Counsel, please identify yourselves for the record.
 8            MR. TOBIN:  Good morning, your Honor.  David Tobin
 9    and Carlos Lopez for the United States.
10            MS. KELLEY:  Good morning, your Honor.  Page
11    Kelley.  I represent Mr. Lepage, who is present.
12            THE COURT:  Ms. Kelley, I gather from the plea
13    agreement your client is offering to plead guilty.  This is
14    a plea being offered pursuant to 11(c)(1)(C).  In other
15    words, it's being presented to the Court for either
16    ratification or rejection.
17            MS. KELLEY:  That's correct, your Honor.
18            THE COURT:  The clerk may proceed.
19            THE CLERK:  Mr. Lepage, Count One of the Second
20    Superseding Indictment filed by the United States Attorney
21    charges you with armed bank robbery, on or about April 4,
22    2011, in violation of Title 18, United States Code,
23    Section 2113(a)(d), to which count you have previously pled
24    "not guilty."  Do you now with to change your plea?
25            THE DEFENDANT:  Yes.
```

1         THE CLERK:  How do you plead to Count One of the
2    Second Superseding Indictment, "guilty" or "not guilty"?
3         THE DEFENDANT:  Guilty.
4         THE CLERK:  Count Two of the Second Superseding
5    Indictment filed by the United States Attorney charges you
6    with possession of a firearm in furtherance of a crime of
7    violence, on or about April 4, 2011, in violation of
8    Title 18, United States Code, Section 924 (c)(1)(A), to
9    which count you have previously pled "not guilty."  Do you
10   now wish to change your plea?
11        THE DEFENDANT:  Yes.
12        THE CLERK:  How do you plead to Count Two of the
13   Second Superseding Indictment, "guilty" or "not guilty"?
14        THE DEFENDANT:  Guilty.
15        THE CLERK:  Please raise your right hand.
16                **MARK STEPHEN LEPAGE, sworn**.
17        THE CLERK:  Please take a seat in the witness box.
18   Ms. Kelley, please accompany him.
19      (Pause in proceedings.)
20        THE COURT:  I'm sorry, Mr. Lepage.  I am not
21   ignoring you.  I am just looking for my copy of the
22   indictment.
23      Mr. Lepage, my name is Richard Stearns.  As I am sure
24   you're aware, I am a judge of the United States District
25   Court.  I am going to ask some questions, and the reason for

1    the questions is that I am required to make my own
2    determination that your decision to plead guilty is a
3    voluntary decision and one made with full knowledge of the
4    consequences of pleading guilty.
5         If any question I ask or anything I say is confusing,
6    either ask me to rephrase it, or feel free to consult with
7    Ms. Kelley before you answer, okay?
8              THE DEFENDANT:  Yes.
9              THE COURT:  For the record, can you tell us your
10   full name.
11             THE DEFENDANT:  Mark Stephen Lepage.
12             THE COURT:  How old are you, Mr. Lepage?
13             THE DEFENDANT:  Fifty.
14             THE COURT:  Were you born in Massachusetts?
15             THE DEFENDANT:  Yes.
16             THE COURT:  Where?
17             THE DEFENDANT:  Winthrop, Massachusetts.
18             THE COURT:  Did you grow up in Winthrop?
19             THE DEFENDANT:  East Boston.
20             THE COURT:  East Boston?
21        Basically all your life in East Boston?
22             THE DEFENDANT:  Yes.
23             THE COURT:  Did you attend schools in East Boston?
24             THE DEFENDANT:  Yes, I did.
25             THE COURT:  How far did you go in school?

```
1              THE DEFENDANT:  Tenth grade.
2       Then I got my GED.
3              THE COURT:  You got your GED?
4              THE DEFENDANT:  And then I went to college.
5              THE COURT:  Where did you go to college?
6              THE DEFENDANT:  In Norfolk.
7              THE COURT:  What did you study?
8              THE DEFENDANT:  Child psychology and abnormal
9       psychology.
10             THE COURT:  Degree or --
11             THE DEFENDANT:  No.  I got out before.
12             THE COURT:  Before you finished the degree program?
13             THE DEFENDANT:  Yes.
14             THE COURT:  Are you married?
15             THE DEFENDANT:  No, divorced.
16             THE COURT:  Children?
17             THE DEFENDANT:  One.
18             THE COURT:  Boy, girl?
19             THE DEFENDANT:  Girl.
20             THE COURT:  How old is she?
21             THE DEFENDANT:  Twenty-four.
22             THE COURT:  So she's pretty much on her own at this
23      point?
24             THE DEFENDANT:  Yes.
25             THE COURT:  What kind of jobs have you done?
```

1     THE DEFENDANT:  I worked for construction mostly on
2  the Big Dig for a lot of years.  I worked shipping and
3  receiving.  I worked at a hospital one time.  That was when
4  I was younger.
5     THE COURT:  Which hospital?
6     THE DEFENDANT:  Winthrop.
7     THE COURT:  Winthrop?
8     This question I don't ask in any way to intrude on your
9  privacy.  I am required to ask it.  Have you ever been
10 treated for any mental condition or psychological problem?
11    THE DEFENDANT:  No, sir.
12    THE COURT:  Are you presently taking any prescribed
13 medication, that is, any medication that might interfere
14 with your ability to understand this proceeding?
15    THE DEFENDANT:  No, sir.
16    THE COURT:  So as far as you're concerned, as you
17 sit here, your mind is clear, you do understand the nature
18 of the proceeding itself?
19    THE DEFENDANT:  Yes, sir.
20    THE COURT:  I know that she has because she is very
21 thorough, and I know that she has discussed the indictment,
22 the charging document, with you, but I again have to ask.
23 Has Ms. Kelley explained the charges to you, more
24 particularly, the elements of the two offenses?  By
25 "elements" a lawyer would mean the critical components of

1  the offenses that the government would be required to prove
2  beyond a reasonable doubt to obtain a conviction.
3          THE DEFENDANT:  Yes, sir.
4          THE COURT:  This is pretty straightforward.  Count
5  one of the indictment charges, in effect, armed bank
6  robbery.  There is a jurisdictional sort of oddity to the
7  charge, which is that for the federal government to assert
8  jurisdiction in this case, it would have to prove that the
9  deposits of the Eastern Bank in Peabody are, in fact,
10 insured by the Federal Deposit Insurance Corporation.  It's
11 technical, but it's important because that is the basis for
12 federal jurisdiction.
13         The indictment is phrased after the statute, that is,
14 "by force and violence and by intimidation did take"
15 obviously from someone who had lawful custody of money of
16 the bank, and here it alleges a sum of approximately
17 $22,000.
18         Count Two of the indictment basically is an elaboration
19 on Count One.  It charges that in relation to this robbery,
20 you, in fact, used and carried a firearm in furtherance.  By
21 "in furtherance" means it is at least contingently available
22 if necessary in the course of the robbery to effectuate the
23 robbery itself.
24         Do you have any questions about the nature of the
25 offenses?

1  THE DEFENDANT: No, sir.

2  THE COURT: Let me ask -- I know it's set out in
3  the plea agreement, but, for the record, let's ask the
4  prosecution just to state the maximum statutory offenses
5  involved.

6  MR. TOBIN: Your Honor, the defendant faces the
7  following minimum mandatory and maximum penalties. On Count
8  One of the indictment, in this instance there is no minimum
9  mandatory for Count One, but it's incarceration for 25
10 years, supervised release for a period of five years, a fine
11 of $250,000, and a mandatory special assessment of $100.

12   With regard to Count Two, the maximum -- or the penalty
13 is incarceration for a minimum of seven years in addition to
14 the punishment imposed for armed bank robbery in Count One,
15 and a maximum of life imprisonment, supervised release for
16 five years, a fine of $250,000, and a mandatory special
17 assessment of $100.

18  THE COURT: All right, Mr. Lepage, that accurately
19 states the maximum statutory penalties.

20   I think more important for our purposes is the plea
21 agreement, particularly given the way this agreement is
22 framed.

23   In this agreement your attorney and the government have
24 come to an agreement as to the appropriate sentence that the
25 Court should impose.

1  The Court is obviously not a party to a plea agreement,
2  but, like most judges, I put a lot of confidence in the work
3  of the lawyers, particularly where there is an agreement
4  between your lawyer and the government. But I think the
5  most useful thing now would be perhaps to have the
6  prosecutor go through the salient elements of the agreement
7  itself.
8  MR. TOBIN: Your Honor, as you noted, this is a
9  plea agreement pursuant to Federal Rule of Criminal
10  Procedure 11(c)(1)(C), sometimes referred to as a "binding
11  plea agreement," in which the Court can either accept the
12  joint recommendation of the parties for an appropriate
13  sentence or can reject it, and then presumably a trial would
14  follow.
15  In this instance the agreed-upon or joint
16  recommendation the parties will be making is as follows:
17  Incarceration for a total period of 192 months, that is 16
18  years. And of the 192 months, 108 months would be on Count
19  One and 84 months, or seven years, would be on Count Two.
20  The parties are also agreeing to 60 months of
21  supervised release, which is what's called for by the
22  statute, and a mandatory special assessment of $200, that
23  would be $100 for each of the two counts, and restitution in
24  the amount specifically of $21,709. That's the amount that
25  was taken from the bank.

The other salient feature of the plea agreement is that in exchange for the joint recommendation or recommendation that is significantly below what the otherwise applicable Guidelines would be, the defendant is waiving his right to appeal or to bring any future challenges.

And those are the most important or salient features of the agreement.

Obviously the Court is not bound by that. Probation will produce it's own presentence report. They also will determine in their determination, if you will, what the guidelines are.

And this is the complete agreement that -- the complete agreement between the parties has been reduced to writing.

THE COURT: Mr. Lepage, I see you've signed and dated the agreement acknowledging that you read it, you've discussed it with Ms. Kelley, and that you're confident that you understand the basic terms of the agreement?

THE DEFENDANT: Yes.

THE COURT: One critical one has already been alluded to several times, which is that this is a binding agreement; that is, there is no authority in this agreement for the Court to exceed or, for that matter, to impose a sentence below that agreed by the attorneys in the case.

The other, and I think appropriately, remarked-upon feature of the agreement is the waiver of the right of

appeal with one limited exception which the Supreme Court requires be carved out in these agreements, that is, with respect to effective assistance of counsel. I would rather doubt that Ms. Kelley would ever ineffectively render assistance, but it, nonetheless, is included in the agreement as the law requires.

Beyond that I will say about the waiver of the right of appeal, these were very controversial provisions when years ago they began to appear in plea agreements. I think at this point every Court of Appeals in the federal system has looked at these provisions and have all come to the same conclusion. Basically courts see plea agreements as contracts. To make any contract enforceable, there has to be an exchange of consideration between the parties. That's what gives it a binding nature.

Here the government obviously has extended a fair consideration, that is, it's agreeing to a sentence which is far lower than the sentence that it could insist upon under the statute if it decided for whatever reason to go to trial, irrespective of your willingness to plead guilty.

On the other hand, you have also given a valuable consideration, that is, you've relieved the government of what obviously is the burden of producing a trial, and there's always a risk in a trial as to its outcome as well. So the government gets certainty in closure, as do you. So

1   I think any Court of Appeals that looked at this agreement
2   using a contract analysis would say this provision is, in
3   fact, binding.
4         But do you have any questions about the plea agreement
5   that have not been answered to this point?
6         THE DEFENDANT:  No, your Honor.
7         THE COURT:  You do understand that by pleading
8   guilty you give up your right to have your case tried before
9   a jury?
10        THE DEFENDANT:  Yes, your Honor.
11        THE COURT:  Do you have any prior experience with a
12  jury trial?
13        THE DEFENDANT:  Yes, your Honor.
14        THE COURT:  As a defendant or a juror?
15        THE DEFENDANT:  Defendant, your Honor.
16        THE COURT:  State Court?
17        THE DEFENDANT:  Yes, your Honor.
18        THE COURT:  Superior Court?
19        THE DEFENDANT:  Yes, your Honor.
20        THE COURT:  So what you saw happen in the Superior
21  Court, and I say this as a former Superior Court judge,
22  would look very much the same here.  In fact, the same Jury
23  Commissioner selects jurors for both the Federal and the
24  State Court, the significant difference being that our
25  jurors come from all of Eastern Massachusetts rather than

1   from the given county, as is the case in the Superior Court.
2        But, like the State Court, we seat a jury of 12
3   ultimately from those who are summoned on the day of trial.
4   As in the State Court, the judge principally, but with the
5   assistance of the lawyers, interviews the prospective
6   jurors to determine their eligibility to sit on the case to
7   be tried.  In the process of seating those jurors, in
8   Federal Court a defendant can object to any ten he does not
9   want seated on his jury, as the government can object to any
10  six it does not want seated.
11       Again, the jury has to be unanimous, as in State Court,
12  after hearing the evidence in the case, the arguments of the
13  lawyers and the legal instructions of the judge; that is,
14  they must in their deliberations come to a unanimous
15  decision as to whether a defendant is guilty or not guilty
16  of any offense submitted to them for a verdict.
17       So when I say you give up your right to have your case
18  tried before a jury, I mean not only the right to have a
19  jury, and not a judge, make the determination as to whether
20  you are guilty or not guilty of these two offenses, but also
21  the right to participate in the selection of the very jury
22  that would make that decision.
23       You do understand that?
24            THE DEFENDANT:  Yes, your Honor.
25            THE COURT:  Again, this will be familiar from State

Court.

You do understand that I would instruct the jury that they must presume you innocent unless and until the government succeeded in proving your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: You do understand that the burden of proof in a criminal trial is proof "beyond a reasonable doubt," a very heavy burden that the government carries throughout the trial?

THE DEFENDANT: Yes, your Honor.

THE COURT: In practical terms, do you understand that means that you would have no obligation to prove your innocence, to produce evidence, to call witnesses, nor certainly could you ever be compelled to testify at trial?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you would be entitled to Ms. Kelley's assistance throughout the jury selection process and throughout the trial of the case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that by pleading guilty, on the other hand, you give up the right, if you should choose to do so, to testify in your own defense before the jury or offer to a jury, rather than the Court, evidence that you believe may be exculpatory or mitigating?

```
 1                THE DEFENDANT:  Yes, your Honor.
 2                THE COURT:  Do you understand that you give up the
 3   right to confront the witnesses against you?  That means to
 4   have Ms. Kelley ask questions on cross-examination of the
 5   government's witnesses.
 6                THE DEFENDANT:  Yes, your Honor.
 7                THE COURT:  Do you understand that you give up the
 8   privilege against self-incrimination, the right to remain
 9   silent, at least for today's purpose?
10                THE DEFENDANT:  Yes, your Honor.
11                THE COURT:  All right.  Let me ask the prosecution
12   to summarize the case that would be presented to the jury if
13   the case proceeded to trial.  When Mr. Tobin finishes, I
14   have to ask if you accept responsibility for the important
15   things he alleges.  By "important things," I mean those
16   facts that actually go to make up the elements of the
17   offense, that is, what the government must prove beyond a
18   reasonable doubt to obtain a conviction.
19                THE DEFENDANT:  Yes, your Honor.
20                THE COURT:  Mr. Tobin.
21                MR. TOBIN:  Your Honor, if case had gone to trial,
22   the government's evidence would prove the following beyond a
23   reasonable doubt:
24       On Monday, April 4, 2011, at approximately 1:14 in the
25   afternoon, the defendant walked into the Eastern Bank in
```

1   Peabody, Massachusetts, brandishing a handgun.  He was
2   dressed it a gray hooded sweatshirt with the hood pulled up
3   over his head in large, dark sunglasses.
4       The defendant grabbed one of the customers who was in
5   line and held a gun to him, and then demanded, essentially,
6   money from the customer, and -- he did not get money from
7   the customer.  But then demanded and received money from the
8   three tellers who were on duty that day.
9       The amount of money that was handed over and that the
10  defendant took was approximately $21,709.
11      That money, as was all of the money at the Peabody bank
12  that day, was federally insured by the FDIC.
13      After taking the money from the three tellers, two of
14  whom were working on the counter, and one who was working on
15  the drive-through window, if you will, after taking the
16  money from the three tellers, the defendant, who put the
17  money in a white plastic bag, fled the bank.
18      He was arrested approximately two days later.
19      In a very summary fashion, your Honor, those would be
20  the facts.
21      Perhaps I should also point out because of Count Two,
22  it does allege brandishing.  The defendant did, in fact,
23  brandish the handgun.  He had it.  It was exposed.  He
24  pointed it at the neck of the customer, and then pointed it
25  in the direction of the tellers during the course of the

1  robbery.
2      Thank you.
3          THE COURT: By "brandishing" you mean "flourishing"
4  or "pointing"?
5          MR. TOBIN: Yes, brandishing was the -- showing of
6  the gun. "Showing" might not be enough. The brandishing of
7  the gun was the pointing of the gun and using it to
8  intimidate the tellers.
9          THE COURT: Ms. Kelley, as I remember, the offense
10  does not require that there be any evidence that the firearm
11  was actually operative?
12          MS. KELLEY: That's correct, your Honor.
13          THE COURT: All right.
14      That was a summary, but I think it covered each of the
15  elements that the offenses involved.
16      Do you acknowledge responsibility for what the
17  government alleges in terms of the facts of the case?
18          THE DEFENDANT: Yes, your Honor.
19          THE COURT: Are you offering to plead guilty
20  willingly, freely, and voluntarily?
21          THE DEFENDANT: Yes, your Honor.
22          THE COURT: Has anyone coerced you in a physical
23  sense into pleading guilty?
24          THE DEFENDANT: No, your Honor.
25          THE COURT: Have any promises been made to induce

1   you to plead guilty, other than, of course, those that are
2   in the plea agreement?
3           THE DEFENDANT:  No, your Honor.
4           THE COURT:  Have any threats been made, other than
5   the threat of being prosecuted?
6           THE DEFENDANT:  No, your Honor.
7           THE COURT:  Have you had sufficient time to discuss
8   with Ms. Kelley the charges, your possible defenses, the
9   nature of any trial that would take place, that is, anything
10  about the case itself?
11          THE DEFENDANT:  Yes, your Honor.
12          THE COURT:  Do you feel that she has acted at all
13  times in your best interest?
14          THE DEFENDANT:  Yes, your Honor.
15          THE COURT:  Ms. Kelley, you believe I should accept
16  the plea agreement in the case?
17          MS. KELLEY:  Yes, I do, your Honor.
18          THE COURT:  Mr. Lepage, have I confused you by
19  anything I said or any question I asked?
20          THE DEFENDANT:  No, your Honor.
21          THE COURT:  You're pleading guilty because you are
22  guilty and, given the terms of this agreement, you believe
23  it's in your best interest to plead guilty?
24          THE DEFENDANT:  Yes, your Honor.
25          THE COURT:  Do counsel have any other areas you

```
 1    want me to inquire into?
 2            MR. TOBIN:  No, you Honor.
 3            MS. KELLEY:  No, your Honor.
 4            THE COURT:  All right, Mr. Lepage, if you don't
 5    mind stepping back to counsel table with Ms. Kelley.
 6        (Pause in proceedings.)
 7            THE COURT:  All right.  I find the defendant is
 8    well-oriented, that his answers have been responsive to my
 9    questions.  I find that he understands the nature of the
10    charges and the potential penalties that he faces.  I find
11    that he is certainly competent to enter a plea, and that he
12    has offered to do so with the full understanding of his
13    rights and the consequences of waiving those rights.
14        I find there is a sufficient basis in the facts
15    presented by the government to warrant a finding of guilty
16    on the two offenses charged beyond a reasonable doubt.
17        In sum, I find that the plea is tendered voluntarily,
18    with full knowledge of its consequences, and after careful
19    consideration by the defendant of his own best interest.
20        I will accept the plea, with the understanding, as is
21    usual, that the plea agreement is subject to review after we
22    receive the presentence report by the Court, and I do
23    understand that in this case my review is limited to either
24    accepting or rejecting the ultimate sentencing
25    recommendation.  My sense is from what I've heard of the
```

1  offense and from what I see in the agreement, it seems like
2  a fair one to me, but we'll make that final judgment at the
3  sentencing hearing, which we'll schedule for April 3, 2014,
4  at 2 p.m.
5      If counsel have nothing further today, we will be in
6  recess on this matter until that date.
7      Okay.
8          MS. KELLEY:  Thank you, your Honor.
9          THE CLERK:  All rise.
10         (Proceedings adjourned.)
11
12                       **C E R T I F I C A T E**
13     I, James P. Gibbons, Official Court Reporter for the
14 United States District Court for the District of
15 Massachusetts, do hereby certify that the foregoing pages
16 are a true and accurate transcription of my shorthand notes
17 taken in the aforementioned matter to the best of my skill
18 and ability.
19 /s/James P. Gibbons                    May 26, 2014
   _____
20 James P. Gibbons
21
22              JAMES P. GIBBONS, CSR, RPR, RMR
                    Official Court Reporter
23                1 Courthouse Way, Suite 7205
                  Boston, Massachusetts 02210
24                   jmsgibbons@yahoo.com
25