UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 11-10152-RGS

UNITED STATES OF AMERICA

v.

MARK LEPAGE

MEMORANDUM AND ORDER ON
PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE

July 18, 2019

STEARNS, D.J.

Mark Lepage brought this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Lepage argues that his conviction should be vacated because he received ineffective assistance from both his trial and appellate counsel. For the reasons to be stated, the motion will be denied.[1]

## BACKGROUND

On November 5, 2013, Lepage was indicted by a federal grand jury for Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and Possession of a Firearm in Furtherance of a Crime of Violence, in violation

---

[1] As the motion can be disposed of on the existing record, the court sees no reason to grant Lepage's request for an evidentiary hearing. *See Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003).

of 18 U.S.C. § 924(c)(1)(A).

During the investigation, Robert Wood, a customer who had witnessed the bank robbery identified Lepage's photograph in a police-assembled array. Wood placed his initials on the photograph to confirm the identification. Both the government and Lepage's trial counsel interviewed Wood prior to the scheduled trial date.

On December 19, 2013, the prosecution, pursuant to its discovery obligations under Local Rule 116.2(b)(2)(A-G), wrote to LePage's counsel stating in relevant part that "the government is unaware of any information that tends to cast doubt on the credibility or accuracy of any witness or evidence the government anticipates calling or offering in its case-in-chief." Pet'r's Mot. (Dkt # 179) Ex. 1, 9.

On January 6, 2014, LePage pled guilty to both counts of the Indictment pursuant to a plea agreement negotiated under the binding sentence provisions of Fed. R. Crim. P. 11(c)(1)(C). On January 20, 2014, the Assistant U.S. Attorney (AUSA) sent an email to Lepage's counsel disclosing that during his pretrial interview, "[Wood had] said that the initials [on the photograph of LePage] did not look like his initials, but he would say they were his," and then, "[Wood] appeared to back away from

2

that statement . . . ." Pet'r's Mot. Ex. 1, 11. The AUSA stated that he did not "know if [Wood] was joking," but that Wood "ultimately . . . [had] no issue with the initials or the identification." *Id.* The AUSA also disclosed a conversation with Wood where "he said something about making a call(s) or doing something to get out of the ticket," however "at the time, [the prosecution] evaluated what he [had] said and . . . did not consider his statement exculpatory." *Id.*

On March 28, 2014, Lepage filed a motion to withdraw his guilty plea. The court denied the motion on June 27, 2014, and on August 22, 2014, after accepting the plea agreement, sentenced LePage to a term of 108 months on Count One and a concurrent term of 84 months on Count Two. On August 25, 2014, Lepage appealed the denial of his motion to withdraw the guilty plea. The First Circuit affirmed the district court's decision on March 2, 2017. *United States v. Lepage*, No. 14-1897 (1st Cir. Mar. 2, 2017).

In support of his Section 2255 petition, Lepage alleges that his trial counsel was ineffective in failing to pursue the issue of the authenticity of Wood's initials on the photograph in the array. He also faults his appellate counsel for failing to raise the argument that the prosecution "violated [his] right to due process under the law" by making "affirmative

misrepresentations" in its December 19, 2013 letter. Pet'r's Reply (Dkt # 182) at 1.

## DISCUSSION

Section 2255 is not a surrogate for direct appeal, but rather provides for post-conviction relief in four limited instances: "if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to direct attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id.*, quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). A cognizable Section 2255 claim, unless it is constitutional or jurisdictional in nature, must reveal "exceptional circumstances" compelling redress. *David*, 134 F.3d at 474. The petitioner bears the burden of demonstrating an entitlement to relief. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980).

While a claim of ineffective assistance of counsel is cognizable under

section 2255, *see Rivera-Rivera v. United States*, 844 F.3d 367, 372 (1st Cir. 2016), a petitioner raising the claim faces a "significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 166 (1982). The petitioner bears the burden of proof. *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." The right to counsel includes the right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). Effective counsel does not mean perfect counsel. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.,* quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

> "First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms . . . . This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not

5

> necessarily a perfect defense or a successful defense . . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted) (a showing of actual prejudice is a necessary element in almost all cases involving allegations of attorney error). While a petitioner need not "prove that the errors were more likely than not to have affected the verdict," *Gonzales-Zoberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001), he must show that they were "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694. The prejudice inquiry, therefore, necessarily focuses "on the fundamental fairness of the proceeding." *Id.* at 696.

Here, to the extent there was any uncertainty about the details of Wood's identification of LePage, it had no material impact on the strength of the government's case. As the First Circuit noted:

> the government's belated disclosures containing alleged impeachment information pertained only to two of the five witnesses to the armed robbery (and to another witness whose testimony would not have been outcome-determinative). . . . [T]he disclosures *would not have fundamentally altered Lepage's chances at trial*: its case for conviction remained strong because it had three eyewitnesses who have previously identified Lepage as the robber.

*Lepage*, No. 14-1897 (1st Cir. Mar. 2, 2017) (emphasis added). Here,

6

Lepage's "failure to satisfy one prong under the *Strickland* analysis [the prejudice prong] obviates the need for [the] court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010).

Lepage's claim of ineffective assistance of appellate counsel also comes up short. Because trial counsel did not raise the issue of a due process violation in the motion to withdraw LePage's guilty plea - most likely based on an informed assessment that there was none - the argument "cannot be resurrected on appeal." *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002). It follows that appellate counsel's refusal to attempt the resurrection of an argument that he was barred from making was not error, and certainly not error of a prejudicial kind.[2]

## ORDER

For the foregoing reasons, Lepage's motion to vacate, set aside, or

---

[2] Lepage's reliance in this regard on *Ferrara v. United States,* 456 F.3d 278 (1st Cir. 2006) is misplaced. In *Ferrara,* the prosecution failed to disclose a police detective's memo documenting a witness's recantation, which the district court found to be "exculpatory evidence that tended to negate the petitioner's guilt or . . . impeach a *crucial* prosecution witness." 456 F.3d at 286 (emphasis added). Here, it is plain as a pikestaff that Wood was neither a crucial prosecution witness, nor was his momentary equivocation exculpatory in any material sense. *See Lepage,* No. 14-1897 (1st Cir. Mar. 2, 2017).

correct his sentence is <u>DENIED</u>.³

                              SO ORDERED.

                              <u>/s/ Richard G. Stearns     </u>
                              UNITED STATES DISTRICT JUDGE

---

³ Petitioner is advised that any request for the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253 of the court's Order dismissing his petition is also <u>DENIED</u>, the court seeing no meritorious or substantial basis supporting an appeal.